UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BRYAN GRAY | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-791-SDJ |
| | § | |
| WINCO FOODS, LLC, ET AL. | § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the Report and Recommendation of the United States Magistrate Judge ("Report"), this matter having been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. The Magistrate Judge entered her Report, (Dkt. #64), recommending that the Court grant Defendants WinCo Foods, LLC; Carly Leibengood; and Bryan Miller's Motion for Summary Judgment, (Dkt. #35), and dismiss Plaintiff Bryan Gray's claims. Gray filed objections to the Report, (Dkt. #65), and filed the transcript from the hearing on the summary-judgment motion, (Dkt. #82). Defendants also filed an objection. (Dkt. #67).[1] Additionally, Defendants responded to Gray's objections. (Dkt. #72, #79).

The Court has conducted a de novo review of the objections and the portions of the Report to which Gray specifically objects. Having done so, the Court concludes that the findings and conclusions of the Magistrate Judge are correct and that the objections are without merit as to the ultimate recommendation of the Magistrate

---

[1] Defendants object only that the Report contains a typographical error indicating that an email exchange occurred on June 24, 2020, as opposed to July 24, 2020. The docket reflects that the Report was reuploaded with the requested correction made to the date. As such, Defendants' objection is moot.

Judge. The Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

## I. Background

The Report sets forth the facts underlying this case in painstaking detail, so the Court will only briefly recap them here. Gray worked for WinCo for approximately seventeen years. At the time of his termination, he was a store manager at Store 126 in North Richland Hills, Texas. In that role, Gray was responsible for ensuring that store employees complied with WinCo policies, including the Family and Medical Leave Act ("FMLA") Policy, Reasonable Workplace Accommodations Policy, and COVID-19 Emergency Paid Leave Benefit Policy.

With respect to the FMLA Policy, Gray's role was limited to ensuring that employees knew of the policy and whom to contact if they needed FMLA leave and relaying information from human resources. A third party, FMLASource, handled FMLA leave requests. As to the Workplace Accommodations Policy, Gray was responsible for engaging in the interactive process to identify potential accommodations for employees with disabilities. The policy allowed managers to provide an accommodation without a doctor's note for up to two weeks. Finally, the COVID-19 Leave Policy allowed eligible employees to take a paid leave of absence for up to two weeks.

In September 2018, Gray received a written warning because he failed to consistently enforce attendance-related policies and procedures.

At the onset of the COVID-19 pandemic, Gray met with his department managers to reassure them that they could take leave if they did not feel safe at work

and to invite them to meet with him one-on-one if needed. Following this meeting, Gray had a one-on-one meeting with Shelby Glass, produce department manager, about her concerns with working during the pandemic. Gray later learned that multiple produce department employees, including Glass, wanted to take leave despite safety precautions that had been implemented. Gray contacted Matt Bryant, produce supervisor, for help.

Defendant Bryan Miller, district manager, called Gray to discuss the situation. Gray felt that Miller was abrasive on this call and did not want employees to take leave. Gray then contacted Jim Reilly, vice president of human resources, to express his concerns regarding the call with Miller. Reilly understood Gray's concerns and encouraged Gray to take leave himself if he felt it was necessary. After this conversation, Miller was more supportive of Gray. Neither the FMLA nor the Americans With Disabilities Act ("ADA") came up during Gray's conversations with Miller and Reilly.

A few months after these phone calls, WinCo decided to reopen the bulk foods sections in its stores, which had been closed due to the pandemic. Miller instructed store managers, including Gray, to reopen the bulk barrels in their stores by no later than July 1, 2020. On that date, Miller visited Gray's store and saw that the bulk foods department remained closed. Gray claimed it was closed because the store was understaffed. Miller asked Gray to immediately reopen the bulk foods department, and the department reopened the next day. Miller emailed Defendant Carly

Leibengood, regional human resources specialist, the next week to express his concerns regarding Gray's non-compliance.

In March 2020, Gray handled an accommodation request from store employee Jennifer Kincaid. As part of the process, Leibengood reminded Gray to review the protocol for an interactive process ("IP") meeting and told Gray he could accommodate Kincaid for up to two weeks without a doctor's note. Kincaid ultimately reported Gray's handling of her request to human resources because, according to her, Gray delayed holding an IP meeting with her despite several requests.

The next month, store employee Deandra Scott asked Gray if she could get shorter hours or sit down for part of the day due to back pain. Gray told Scott that she needed a doctor's note. Kincaid saw the interaction and reminded Gray that he could accommodate Scott for up to two weeks without a doctor's note. Kincaid reported the interaction between Gray and Scott to human resources. According to Gray, Kincaid and Scott falsely claimed that he failed to have an IP meeting with Scott or to accommodate her.

After these reports by Kincaid, Leibengood began an investigation. Leibengood found no documentation reflecting Scott's accommodation request. Leibengood asked Gray to hold an IP meeting with Scott, and Scott later received an accommodation. In Leibengood's report of the investigation, she noted that Gray admitted to knowing that Scott had requested an accommodation, that Gray did not complete the IP meeting in a timely manner, and that Gray admitted to knowing that he could temporarily accommodate an employee without a doctor's note.

Leibengood shared the results of her investigation with Miller and recommended that Gray be terminated. Miller raised the failure to reopen the bulk foods department as an additional reason for terminating Gray. According to Miller, he made the decision to terminate Gray on July 10, 2020, but Miller was leaving for vacation the next day. Miller was also aware that Gray was leaving for vacation the day after Miller returned from vacation. Miller planned to terminate Gray the day that Gray returned from vacation, July 27, 2020. On July 24, 2020, Leibengood and Miller exchanged emails regarding Gray's termination. One email included a draft termination letter.

The day before Gray's planned termination, Gray sent a text message to Miller informing Miller that Gray's wife had a fever and was going to get tested for COVID-19. Gray quarantined and did not come into work. The next week, Gray told Miller he also got tested because he had lost his sense of taste and smell. Eight days after that, Gray told Miller he tested positive for COVID-19. Gray returned to work on August 18, 2020. That day, Gray was terminated. The termination letter stated that Gray was being terminated for failing to reopen the bulk foods department by the deadline and inconsistencies in the execution of the interactive process meetings required for accommodation requests. A few days after his termination, Gray submitted an FMLA leave request for the time period from July 27, 2020, to August 17, 2020.

Gray filed suit against WinCo, Miller, and Leibengood, bringing claims under the ADA, Texas Labor Code, and FMLA. Defendants moved for summary judgment on all of Gray's claims.

## II. LEGAL STANDARD

A district court reviews the findings and conclusions of a magistrate judge de novo only if a party objects within fourteen days after being served with the report and recommendation. 28 U.S.C. § 636(b)(1)(C). To challenge a magistrate judge's report, a party must specifically identify those findings to which he objects. *See id.* "Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). "And objections that simply rehash or mirror the underlying claims addressed in the report are not sufficient to entitle the party to de novo review." *Thompson v. Pruett*, No. 4:21-CV-371, 2022 WL 989461, at *1 (E.D. Tex. Mar. 31, 2022); *see also Nickelson v. Warden*, No. 1:11-CV-334, 2012 WL 700827, at *4 (S.D. Ohio Mar. 1, 2012) ("[O]bjections to magistrate judges' reports and recommendations are not meant to be simply a vehicle to rehash arguments set forth in the petition."); *United States v. Morales-Castro*, 947 F.Supp.2d 166, 171 (D.P.R. 2013) ("Even though timely objections to a report and recommendation entitle the objecting party to *de novo* review of the findings, the district court should be spared the chore of traversing ground already plowed by the Magistrate." (quotation omitted)).

## III. DISCUSSION

In her Report, the Magistrate Judge concluded that (1) Gray failed to make a prima facie showing of retaliation under the ADA or the Texas Labor Code because Gray did not engage in protected activity and because there was no causal connection between any protected activity and his termination; (2) Gray's ADA interference claim fails because Gray did not exercise rights under the ADA or aid or encourage others in exercising rights under the ADA; and (3) Gray's FMLA claims fail because WinCo did not deny Gray any benefits to which he was entitled under the FMLA, Gray did not engage in protected activity as required for a retaliation claim under the FMLA, and Gray's claim for interference with proceedings or inquiries related to the FMLA fails because, beyond this lawsuit itself, Gray did not institute or participate in any such proceedings. Gray objects to all of these conclusions. The Court addresses Gray's objections in turn.

### A. Gray's First Objection: The Report Contradicts Oral Argument

First, Gray objects that the Magistrate Judge's recommendations in the Report contradict statements made on the record at oral argument. According to Gray, the Magistrate Judge "all but announced her determination at the hearing to recommend a denial of the motion for summary judgment, noting that [Gray's] claims seemed highly appropriate for mediation." (Dkt. #65 at 2). The objection fails for two reasons. First, a magistrate judge's observations at a hearing in no way bind the judge to make a particular recommendation on a pending motion. For this reason alone, the objection is meritless.

Further, the objection is premised on a mischaracterization of the Magistrate Judge's comments at the hearing. The Magistrate Judge did not "all but announce[]" that she would recommend denying the motion for summary judgment. Rather, the Magistrate Judge indicated that mediation may be warranted "[g]iven [Gray's] long history with [Defendants]" and "given some of the facts." (Dkt. #81 at 51). To argue that this statement somehow reflected a commitment to ruling in any given way on the summary-judgment motion is misguided.

Gray's first objection is overruled.

## B. Gray's Second Objection: The Report's Factual Background Is Flawed

Gray next objects that the Magistrate Judge "flout[ed] basic requirements of adjudication of a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure" because the Report does not view the facts in the light most favorable to Gray and incorrectly states the pertinent facts. (Dkt. #65 at 2). But it is Gray, not the Magistrate Judge, who has flouted his duty here by failing to "set forth and support *by summary judgment evidence* specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (emphasis added). The Court will consider each of Gray's challenges to the facts recited in the Report in turn.

### i. Gray's role in dealing with FMLA leave requests

First, Gray argues that the Magistrate Judge understated Gray's role in handling employees' FMLA requests. According to Gray, he was "active in encouraging invocation of the FMLA (and ADA) in connection with employees" dealing with concerns related to COVID-19 infections. (Dkt. #65 at 3). But the

deposition excerpts Gray cites in support of this argument do not actually speak to Gray encouraging employees to use FMLA or ADA leave—instead, they speak generally to Gray being supportive of employees taking leave, the fact that employees Gray managed took leave, and concerns Gray raised with Miller regarding employees taking leave for COVID-19-related reasons.[2] They do not counter the evidence from Gray's own deposition that Gray's responsibilities with respect to FMLA were only to "mak[e] sure that resources were available and in some situations just relay[] information . . . from human resources to the employee that applied." (Dkt. #35-1 at 27–28). The Magistrate Judge did not misrepresent Gray's role in handling FMLA leave requests.

### ii. Written warning

Second, Gray argues that the Magistrate Judge erroneously considered a written warning that was not alleged to be a reason for Gray's termination. But the written warning is expressly referenced in Gray's termination letter. *See* (Dkt. #35-3 at 41) ("Specifically, on September 18th, 2018 you received a Written Warning for violation of WinCo Company Personnel Policies . . . ."). Although the written warning did not directly lead to Gray's termination, the termination letter notes that the written warning shows that Gray had already been disciplined "for similar concerns" to the concerns leading to Gray's termination. (Dkt. #35-3 at 41); *see also* (Dkt. #35-3 at 42) ("We have brought similar concerns regarding consistent application of policies and procedures to your attention and given you multiple opportunities to fix the

---

[2] The Report contains the latter fact. *See* (Dkt. #64 at 7) ("[Gray] reiterated to Miller . . . that multiple produce department employees were interested in taking leave.").

problem, yet we continue to see significant gaps in proper administration."). The Magistrate Judge properly considered the written warning.

### iii. Facts related to non-ADA and non-FMLA leave

Third, Gray objects that the Magistrate Judge erroneously considered facts and communications related to leave that was not taken under the FMLA or ADA. But these facts are relevant background and show that the Magistrate Judge thoroughly considered all summary-judgment evidence in determining, inter alia, that Gray did not engage in protected activity. *See, e.g.*, (Dkt. #64 at 25). The Magistrate Judge properly considered these facts.

### iv. Insubordination claim

Fourth, Gray asserts that the Magistrate Judge improperly found that the claim of insubordination related to the delayed opening of the bulk foods section was appropriate. The Magistrate Judge made no such finding. In the portion of the Report cited by Gray, the Magistrate Judge correctly states that "Miller testified that he found [Gray's] failure to reopen the bulk foods department by the July 1st deadline to be insubordination." (Dkt. #64 at 9). The Report does not suggest that Miller's conclusion was appropriate, only that Miller testified that he found Gray's actions to be insubordinate. *See* (Dkt. #39-2 at 6) (reflecting Miller's testimony that he believed Gray was insubordinate because "he didn't open the bulk foods department or attend to it by the time that I gave him instruction."). Moreover, Gray does not point to any evidence he provided that disputes Miller's account. *See* (Dkt. #39 ¶¶ 5–6). The Magistrate Judge properly considered Miller's perceptions of Gray's actions.

### v. Accommodation of Jennifer Kincaid and Deandra Scott

Fifth, Gray argues that the Magistrate Judge improperly considered the issue of accommodating Jennifer Kincaid because her treatment was not a reason given for Gray's termination. Nowhere in the Report does the Magistrate Judge suggest that Kincaid's treatment factored into Gray's termination. Rather, the Kincaid situation is included as relevant background information that is necessary for understanding the situation with Deandra Scott and the investigation that preceded Gray's termination.

Gray also contends that in evaluating the second reason for Gray's termination—the issues related to accommodating Deandra Scott—the Report "gives full credit to extensive hearsay by a human resources representative," Leibengood, that is "contradicted by summary judgment evidence of [Gray]." (Dkt. #65 at 4–5). Gray neither identifies the alleged hearsay evidence nor explains how the evidence contained in the five pages of his briefing cited in the Objections contradicts such evidence.[3] The Report acknowledges that at his deposition, Gray disputed Kincaid

---

[3] The Court notes that Gray's many attempts to incorporate by reference vast citations to the evidentiary record that were first asserted in his summary-judgment briefing have insufficient specificity to warrant de novo review. "In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific." *Peterson v. Day*, No. 21-2027, 2022 WL 16758322, at *2 (E.D. La. Nov. 8, 2022). *See also Burley v. Stephens*, No. 2:15-CV-290, 2016 WL 4445441, at *4 (S.D. Tex. Aug. 24, 2016) ("As a preliminary matter, Petitioner stated that he 'stands firm' with his claims and seeks to incorporate by reference his previous briefing into his current objections. Incorporation by reference of prior briefing fails to challenge, with specificity, the recommended findings of fact and conclusions of law of the Magistrate Judge as required by 28 U.S.C. § 636(b)."). Courts routinely find such objections to be "general objections" not meriting further analysis.

and Scott's version of events regarding Scott's accommodation request, *see* (Dkt. #64 at 12), and outlines the findings Leibengood made as a result of her investigation, (Dkt. #64 at 13). The Report properly evaluated the second reason for Gray's termination.

### vi. Timing of and reasons for Gray's termination

Sixth, Gray contends that the Magistrate Judge improperly credited Defendants' version of the facts related to the reason for Gray's termination and the timing of the termination decision. Gray argues that his summary-judgment evidence undermines Defendants' positions, but again he only cites to large portions of his summary-judgment briefing without identifying any specific evidentiary concerns. *See supra* n.3. As to the timing of the termination decision, Gray's briefing addresses the decision to delay the termination itself, but he points to no evidence creating a fact dispute as to when the decision was initially made. He does not controvert Defendants' assertion, supported by evidence, that the decision was made before July 24, 2020.

As to the first reason for Gray's termination, failure to reopen the bulk foods section, Gray does not dispute that he did not reopen the bulk foods section by the stated deadline or that he was told that his failure to do so was a reason he was being terminated. *See* (Dkt. #39-1 at 5). Rather, he takes issue with the fact that he was not

---

*See, e.g., Aldrich v. Bock*, 327 F.Supp.2d 743, 747–78 (E.D. Mich. 2004) ("A general objection to the magistrate's report has the same effect as a failure to object.").

In any event, the Court has reviewed the briefing to which Gray referred and discerns no error in the Report's handling of those issues.

warned that he would be terminated if he did not comply with the reopening order and that other managers have not been terminated for this reason.

As to the second reason, Gray's handling of accommodation requests, the Report never endorses Defendants' version of events and never finds that Gray did in fact mishandle Scott's accommodation request. The Report merely outlines Leibengood's investigation and the findings from that investigation. Whether those findings were accurate is irrelevant to the conclusions reached in the Report and thus is not addressed by the Magistrate Judge. The Magistrate Judge properly stated and considered the facts relating to the reasons for Gray's termination.

### vii. Physician certification

Seventh, Gray challenges the Magistrate Judge's "suggest[ion]" that Gray would not be entitled to FMLA leave until and unless he provided a physician's certificate. (Dkt. #65 at 5). The Report correctly states that FMLASource told Gray he needed to submit a medical certification form—whether that is consistent with FMLA regulations is irrelevant. *See* (Dkt. #39-9 at 5). And the Report acknowledges that Gray's physician completed the requested form, so whether the form was actually required has no bearing on the outcome of this case.

### viii. Omission of pertinent facts

Finally, Gray argues that the Report "simply omits multiple other pertinent facts." (Dkt. #65 at 5). But Gray does not identify those facts, other than to cite to eleven paragraphs of his summary-judgment response brief (spanning five pages) and seven pages of his sur-reply brief. This is the type of general objection that this Court need not consider. Nonetheless, the Court has reviewed the briefing to which Gray

13

referred and discerns no erroneously omitted facts that are material to the summary-judgment determination.

For the reasons stated above, the Court overrules Gray's second objection.

## C. Gray's Third Objection: The Report Does Not Adhere to Rule 56

Gray next objects broadly that the Magistrate Judge failed to adhere to the requirements of Rule 56 related to factual findings in at least seven different ways. Gray does not point to any specific instance of these alleged failures. Instead, he makes general and unsupported assertions such as the following: "[H]er failure to consider many aspects of Plaintiff's summary judgment evidence." (Dkt. #65 at 8). But Gray points to no evidence that the Magistrate Judge did not consider, points to no specific facts that were improperly viewed in the light most favorable to Defendants, and points to no irrelevant facts that the Magistrate Judge improperly considered. The Court has already reviewed Gray's challenges to specific factual findings above. And though this is the type of general objection the Court need not consider, the Court notes that it has reviewed all factual findings in the Report and finds that the Magistrate Judge's analysis complies with Rule 56.

Separately, Gray suggests that the Magistrate Judge departed from norms in this District concerning the handling of summary-judgment motions. According to Gray, "[i]n this District, district judges have proudly and consistently taken the position in multiple contexts that lawsuits are generally to be tried to a jury, not prematurely prejudged by a court in the absence of a jury under Rule 56." (Dkt. #65 at 18). To the extent Gray suggests there should be, or has been, a "thumb on the scale" against summary judgment in this District, the Court rejects that suggestion.

"Summary judgment is not a 'disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action.""" *Ragas*, 136 F.3d at 458 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Goldring v. United States*, 15 F.4th 639, 644 (5th Cir. 2021) (same). Like each of the Federal Rules of Civil Procedure, Rule 56 will be applied impartially, according to its text and applicable precedent from the Supreme Court and the Fifth Circuit.

Gray's third objection is overruled.

### D. Gray's Fourth Objection: The Report Incorrectly Analyzed Gray's ADA Retaliation Claim

Gray objects to the Report's determination that Defendants are entitled to summary judgment on his ADA retaliation claim because he did not engage in protected activity and, even if he did, there was no causal connection between any protected activity and his termination.

Gray argues that advocating for employees exercising rights under the ADA is a protected activity. The Report does not dispute this fact. Rather, the Magistrate Judge concluded that Gray advocated for a group of employees to whom the ADA does not apply because they did not have disabilities within the meaning of the ADA. Gray has not pointed the Court to any summary-judgment evidence contradicting the Magistrate Judge's conclusion. He cites four pages of his response brief, which in turn cite another section of his response brief, which in turn cites certain deposition excerpts. None of these excerpts shows that Gray advocated for employees exercising rights under the ADA. At most, they show that he supported employees taking

COVID-19 leave and that he expressed concerns related to COVID-19. This conduct does not amount to either "opposing any act or practice made unlawful by the ADA," *St. John v. Sirius Sols., LLLP*, 299 F.App'x 308, 309 (5th Cir. 2008) (per curiam) (simplified), or "assuring that other employees are treated lawfully under [the ADA]," (Dkt. #39 at 45) (citing *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 346–47 (6th Cir. 2021)).

Next, Gray argues that he engaged in protected conduct when he requested leave for his own COVID-19 infection, which he contends amounted to asking for an accommodation under the ADA. As the Magistrate Judge correctly stated, Gray's FMLA leave request was not a request for an accommodation under the ADA under binding Fifth Circuit precedent. *See* (Dkt. #64 at 26) (citing *Acker v. Gen. Motors, LLC*, 853 F.3d 784, 791 (5th Cir. 2017)). As the Fifth Circuit explained in *Acker*, "a request for FMLA leave is not a request for a reasonable accommodation under the ADA." 853 F.3d at 791.[4]

Gray also argues that his COVID-19 infection amounted to a disability because he was "absolutely precluded from returning to work except on remission of symptoms for a certain number of days." (Dkt. #65 at 11). Again, in support of this argument, Gray cites only unpublished decisions from district courts in other circuits, along with guidance from the Department of Health and Human Services on "long COVID"—a condition that Gray does not allege he had. (Dkt. #65 at 11). In this regard, the Court

---

[4] Because it conflicts with controlling Fifth Circuit precedent, *Booth v. GTE Fed. Credit Union*, No. 8:21-CV-1509, 2021 WL 5416690, at *7 (M.D. Fla. Nov. 20, 2021), an unpublished decision from the Middle District of Florida applying Eleventh Circuit case law, is of no help to Gray on this point.

recognizes recent regulatory guidance suggesting that, in some circumstances, COVID-19 may be considered a disability under the ADA. For example, the Department of Health and Human Services and Department of Justice jointly developed the *Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557*. ("ADA Guidance").[5] The ADA Guidance notes that COVID-19 may be a "physical or mental impairment under the ADA." *Id*. at 3. The guidance further notes that certain forms of COVID-19 can "substantially limit major life activity" as required to be considered a disability under the ADA. *Id*. at 4. Examples include, but are not limited to, limited "respiratory function, among other major life activities." *Id*. The Equal Employment Opportunity Commission ("EEOC") has also provided guidance about when COVID-19 can constitute a disability under the ADA. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*. ("EEOC Guidance").[6] The EEOC Guidance notes that COVID-19 may be a disability, but it is not always a disability. *Id*. at n.3. Whether COVID-19 is an actual disability under the ADA requires a "case-by-case determination." *Id*. at n.2. Further, according to the EEOC, an individual who is asymptomatic or who has mild symptoms will not have a disability within the meaning of the ADA. *Id*. However "a person with COVID-19 or Long COVID has an actual disability if the

---

[5] Dep't of Health & Hum. Servs. & Dep't of Justice (July 26, 2021), [https://perma.cc/T22Y-685T].

[6] U.S. Equal Emp. Opportunity Comm'n (May 15, 2023), [https://perma.cc/FQX6-AFED].

person's medical condition . . . substantially limits one or more major life activities." *Id.* (alterations and quotations omitted).

Of course, such guidance is not binding on the Court, but it is "helpful in deciding the issue of whether COVID-19 can be a disability," and suggests that COVID-19 may be a disability only when it results in a condition that is sufficiently severe to impair major life activities. *See, e.g.*, *Brown v. Roanoke Rehab. & Healthcare Ctr.*, No. 3:21-CV-00590-RAH, 586 F.Supp.3d 1171, 1176 (M.D. Ala. 2022) (analyzing an ADA COVID-19 disability claim based on regulatory guidance). Indeed, the common theme in the regulatory guidance is that COVID-19 may be a disability when it is long-term—lasting for months—not when it is acute. *See* ADA Guidance, at 1; EEOC Guidance, at n.4. The ADA Guidance refers to individuals with "Long COVID," as those who experience symptoms "months after first being infected, or may have new or recurring symptoms at a later time." ADA Guidance, at 1. The EEOC Guidance also refers to individuals who experience symptoms lasting for months. EEOC Guidance, at n.4.

Here, Gray has neither alleged nor pointed to any evidence showing that he or any of his co-workers infected with COVID-19 suffered from "Long COVID" or otherwise experienced recurring symptoms or symptoms that lingered "months after first being infected." And, as the Magistrate Judge correctly found, there is no summary-judgment evidence showing that Gray's COVID-19 "substantially limit[ed] one or major life activities." 42 U.S.C. § 12102(1)(A) (defining "disability"). This Court agrees with other courts across the country that have held that merely being infected

with COVID-19 and experiencing short-term symptoms, as was the case with Gray, does not constitute a disability under the ADA. *See, e.g.*, *Roman v. Hertz Loc. Edition Corp.*, No. 3:20-CV-2462-BEN (AGS), 2022 WL 1541865, at *7 (S.D. Cal. May 16, 2022) ("The federal courts mostly agree that a short-term COVID-19 infection does not qualify as an ADA disability.") (collecting cases); *Anderson v. L. Keeley Constr.*, No. 4:22-CV-710, 2022 WL 3585596, at *2 (E.D. Mo. Aug. 22, 2022). And at least one other district court in the Fifth Circuit has reached the same conclusion. *See Worrall v. River Shack LLC*, No. 3:22-CV-392, 2022 WL 3371345, at *3–5 (N.D. Tex. Aug. 15, 2022) (finding that the plaintiff's alleged COVID-19 infection was "transitory and minor" and not a disability within the meaning of the ADA and collecting cases).

Gray also argues that the Magistrate Judge erred in finding that there was no causal connection between his alleged protected activity and his termination. Gray does not point to any evidence of a causal connection and seemingly argues that merely engaging in advocacy is sufficient because his advocacy was "notable and noticed" and because Gray "risk[ed] retaliation." (Dkt. #65 at 12). If all advocacy of which employers were aware supported a retaliation claim, the causation element effectively would be rendered a nullity. The Magistrate Judge correctly concluded that there is no genuine issue of material facts as to causation.

For the foregoing reasons, the Court overrules Gray's fourth objection.

## E. Gray's Fifth Objection: The Report Incorrectly Analyzed Gray's ADA Interference Claim

Gray argues that the Magistrate Judge erred in determining that his ADA interference claim could not survive summary judgment because he did not show that

he either exercised any right under the ADA or aided or encouraged other individuals in exercising their rights under the ADA. As explained herein, *see supra* Part III.D, the Report correctly concluded that Gray did not show that his COVID-19 diagnosis constituted a disability under the ADA or that any of the employees he allegedly advocated on behalf of had a disability under the ADA. Therefore, the Magistrate Judge also correctly concluded that Gray did not exercise a right under the ADA or encourage others in exercising rights under the ADA.

The Court overrules Gray's fifth objection.

### F. Gray's Sixth Objection: The Report Does Not Sufficiently Address the Texas Labor Code Claim

Next, Gray argues that the Magistrate Judge failed to offer independent reasoning for dismissing Gray's disability retaliation claim under the Texas Labor Code. There is no error here. "Because [the Texas Labor Code] parallels the language of the ADA, Texas courts follow ADA law in evaluating [Texas Labor Code] discrimination claims." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.16 (5th Cir. 2020) (simplified).

The Court overrules Gray's sixth objection.

### G. Gray's Remaining Objections to the Dismissal of His FMLA Claims

#### i. Gray's alleged "serious health condition" under the FMLA

Gray's remaining objections concern the dismissal of his FMLA claims. As the Magistrate Judge recognized, the FMLA provides two distinct protections for employees, one proscriptive and one prescriptive. *Amedee v. Shell Chem. LP*, 953 F.3d 831, 834 (5th Cir. 2020). The proscriptive provision protects employees from

retaliation or discrimination for exercising their FMLA rights. *Id*. "Claims for violations of [those] rights are brought under [29 U.S.C.] § 2615(a)(2)." *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

The "prescriptive provisions," by contrast, "create a series of entitlements or substantive rights." *Amedee*, 953 F.3d at 834 (internal quotation marks and citation omitted); *see also Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 580 (5th Cir. 2006). Under the FMLA, eligible employees may take up to twelve weeks of leave in a twelve-month period to attend to various family and medical issues. 29 U.S.C. § 2612(a)(1). Upon an employee's return from a qualified leave, employers must restore the employee to either "the position of employment held by the employee when the leave commenced" or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id*. § 2614(a)(1). "Claims for failure to restore are also known as 'entitlement claims' and are brought under § 2615(a)(1)." *Amedee*, 953 F.3d at 834–35 (citing *McArdle v. Dell Prods., L.P.*, 293 F.App'x 331, 334 (5th Cir. 2008) (per curiam)).

Here, Gray challenges the Magistrate Judge's recommendation that his restoration-of-employment claim, asserted under FMLA Section 2615(a)(1), must be dismissed because he was not entitled to leave under the FMLA in the first place. Gray specifically objects to the Magistrate Judge's conclusion that his infection with COVID-19 was not a "serious health condition" under the FMLA. The Court will overrule the objection.

In this regard, to prove his Section 2615(a)(1) claim, Gray was required to show that: (1) he was an eligible employee; (2) his employer was subject to the FMLA's requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F.App'x 312, 316 (5th Cir. 2013) (per curiam); *see also Burris v. Brazell*, 351 F.App'x 961, 963 (5th Cir. 2009) (per curiam) ("To make a *prima facie* case for interference with FMLA rights, [the plaintiff] must first demonstrate that she took leave that was protected under the FMLA."). As part of this showing, Gray had to present evidence of a "serious health condition," *see Mauder*, 446 F.3d at 580, which the FMLA defines as "an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). *See also Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999).

The record in this case is bereft of any evidence that Gray's COVID-19 infection involved inpatient care at a medical facility or "continuing treatment by a health care provider." To the contrary, the record shows that Gray's initial symptoms were a loss of taste and smell, followed by nausea and fever for "a couple of days." (Dkt. #35-1 at 114). Once his fever was gone, Gray no longer had any symptoms of COVID-19, and advised WinCo he was ready to come back to work because he had been symptom-free for days. On this record, Gray's contention that his short-term, transitory COVID-19 infection amounted to a "serious health condition" under the FMLA is

patently meritless. For this reason alone, the Magistrate Judge properly concluded Gray's Section 2615(a)(1) claim fails at the outset.

### ii. No entitlement to be restored to store manager position

As the Magistrate Judge properly concluded, Gray's Section 2615(a)(1) claim also fails because he cannot show he was denied benefits to which he was entitled under the FMLA, the fifth element of the claim. *See Lanier*, 527 F.App'x at 316. Here, Gray invoked a right to be restored to his job as a store manager at WinCo upon his recovery from COVID-19 and return to work on August 18, 2020. The record unmistakably shows that this is a meritless contention.

Gray is correct that "[a]n employee generally has the right to be reinstated to his previous position or an equivalent position upon his return from FMLA leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021) (citing 29 U.S.C. § 2614(a)(1)(A)–(B)). This "right is not unlimited, however." *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013). In this regard, the Fifth Circuit has explained that "denying reinstatement to an employee whose right to restored employment had *already been extinguished*—for legitimate reasons unrelated to his efforts to secure FMLA leave—does not violate the [FMLA]." *Id.* at 682; *see also Amedee*, 953 F.3d at 836 (observing that an employer may challenge an employee's "right to return to work after a qualified absence . . . by offering evidence that the employee would have lost his position even had he not taken FMLA leave" (quotations omitted)). "[T]he employer has an evidentiary burden on summary judgment to prove that the plaintiff would have lost his position even if he had not taken FMLA leave." *Hester*, 11 F.4th at 307. "If the employer satisfies this burden, then the plaintiff must

23

present evidence sufficient to raise a jury question that [the employer's] stated reason for firing him . . . was pretextual." *Id.* (quotations omitted).

The undisputed evidence in this case shows that Gray would have lost his position regardless of whether he took FMLA leave, and Gray has pointed to no evidence, much less evidence to support a jury question, that WinCo's stated reasons for his termination were pretextual. As described herein, *see supra* Part I, and in detail in the Report, WinCo had already decided to terminate Gray's employment in early July 2020, weeks before Gray contracted COVID-19 and communicated with Miller about taking FMLA leave. Under the circumstances, and as the Magistrate Judge correctly concluded, where, as here, "'the wheels of termination were put in motion before the request for leave . . . the restoration provision should not apply.'" (Dkt. #64 at 41) (quoting *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 926 (5th Cir. 1999)).

### iii. Gray's Section 2615(a)(2) and (b) claims

Gray has also objected to the Magistrate Judge's recommendation that his retaliation claims under Section 2615(a)(2) and related claims under Section 2615(b) should also be dismissed. The objection will be overruled.

The FMLA prohibits employers from "discharging[ing] or . . . discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Retaliation claims for exercising an FMLA right are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). Under that framework, an employee must show that "(1) he engaged in a protected activity, (2) the employer

discharged him, and (3) there is a causal link between the protected activity and the discharge." *Amedee*, 953 F.3d at 835 (quotation omitted). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). If the employer then meets its burden, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id*. at 388–89.

The Magistrate Judge correctly concluded that Gray cannot establish a prima facie case under Section 2615(a)(2) because there is no evidence that he engaged in protected activity under the FMLA. Gray has asserted that he "actively assisted" WinCo employees with the exercise of "FMLA rights." (Dkt #65 at 17). But as the Magistrate Judge observed, encouraging employees to take leave during the pandemic is not evidence that Gray "actively assisted" any employee with FMLA leave. There is no evidence that Gray played any role in any WinCo employee's exercise of FMLA rights. To the contrary, as explained in the Report, the record in this case, including Gray's testimony, confirms that he was not involved in administering or deciding FMLA requests, and he admitted that the employees for whom he advocated during the pandemic were not seeking FMLA leave.

Gray also maintains that he engaged in protected activity based on his own request for FMLA leave. The Court agrees with the Magistrate Judge that this argument fails in the first instance because Gray did not provide notice of his intent to take FMLA leave until after his termination. *See* (Dkt. #64 at 44) (explaining that

Gray "does not dispute that he did not submit a FMLA request to FMLASource until after he was terminated."). Although Gray points to an earlier text exchange between himself and Miller concerning a potential request for FMLA leave, *see* (Dkt. #64 at 44), those communications do not amount to a notice of intent to take such leave. Regardless, however, the Court also agrees with the Magistrate Judge's conclusion that, even assuming that WinCo was aware of his request for FMLA leave prior to his formal termination, there is no evidence of a causal link between such request for FMLA leave and Gray's termination. It is uncontroverted that WinCo's decision to terminate Gray came before Gray and his wife were infected with COVID-19 and Gray asked for (and was granted) FMLA leave.

Finally, Gray also invoked Section 2615(b) of the FMLA, which makes it unlawful for an employer "to discharge or in any other manner discriminate" against an "individual" because that person:

> (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;
>
> (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or
>
> (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

29 U.S.C. § 2615(b). As the Magistrate Judge noted, beyond this lawsuit there is no allegation, much less any evidence, that Gray meets any of the circumstances described in Section 2615(b). Because, at best, Gray's Section 2615(b) claim is redundant of his other FMLA claims, all of which fail on the record in this case, the

Magistrate Judge correctly concluded that Gray's Section 2615(b) claim must also fail.

For all of these reasons, Gray's objections to the Magistrate Judge's recommendations concerning the dismissal of Gray's FMLA claims are overruled.

## IV. Conclusion

Plaintiff Bryan Gray's objections, (Dkt. #65), are **OVERRULED** and the Report and Recommendation of the Magistrate Judge, (Dkt. #64), is **ADOPTED** as the opinion of the Court.

It is therefore **ORDERED** that Defendants WinCo Foods, Carly Leibengood, and Brian Miller's Motion for Summary Judgment, (Dkt. #35), is **GRANTED** and Plaintiff Bryan Gray's claims are **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 19th day of July, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE